No. 24-2910

IN THE UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT

SUSAN VANNESS, ALEXANDREA SLACK, MARTIN WALDMAN, and
ROBERT BEADLES

*Plaintiffs/Appellants,*

v.

FRANCISCO V. AGUILAR, in his official capacity as Nevada Secretary of State,
and JOSEPH M. LOMBARDO, in his official capacity as Governor of the State of
Nevada.,

*Defendants/Appellees.*

On Appeal from the United States District Court
for the District of Nevada
No. 2:23-cv-01009-CDS-MDC
Hon. Christina Silva

**DEFENDANTS/APPELLEES' ANSWERING BRIEF**

AARON D. FORD (Bar No. 7704)
Attorney General
JESSICA E. WHELAN
(Bar No. 14781)
Deputy Solicitor General
Office of the Nevada Attorney
General
1 State of Nevada Way
Las Vegas, NV 89119
(702) 486-3420 (phone)
(702) 486-3773 (fax)
JWhelan@ag.nv.gov
*Attorneys for Defendant-Appellee*
*Governor Lombardo*

AARON D. FORD (Bar No. 7704)
Attorney General
LAENA ST-JULES (Bar No. 15156)
Senior Deputy Attorney General
Office of the Nevada Attorney
General
100 North Carson Street
Carson City, NV 89701
(775) 684-1100 (phone)
(775) 684-1108 (fax)
LStJules@ag.nv.gov
*Attorneys for Defendant-Appellee*
*Secretary Aguilar*

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ................................................................. iii

ISSUES PRESENTED ........................................................................ 1

STATEMENT OF THE CASE ............................................................ 1

STANDARD OF REVIEW ................................................................. 4

SUMMARY OF ARGUMENT ............................................................ 5

ARGUMENT ...................................................................................... 6

I.   This Action Was Correctly Dismissed Because It Is Not Justiciable .......... 6

    A.   Plaintiffs' Claims Are Not Justiciable Because Plaintiffs Have Not Adequately Alleged a Credible Threat of Prosecution ................ 6

        1.   Plaintiffs Have Not Alleged Any Intention to Violate SB 406 ........................................................................ 8

        2.   Plaintiffs Fail to Allege a Specific Warning or Threat to Enforce SB 406 ........................................................... 10

        3.   Plaintiffs Do Not Allege Any History of Past Prosecution ....... 13

    B.   Plaintiffs' Claims Are Not Traceable to Defendants ........................ 13

II.   The Eleventh Amendment Further Bars This Lawsuit Against Defendants ........................................................................ 14

    A.   Plaintiffs Named the Wrong Defendants ............................................ 14

    B.   Plaintiffs' State-Law Claim Is Entirely Barred by the Eleventh Amendment ............................................................................ 16

III.   Even if Plaintiffs' Claims Are Justiciable and the Eleventh Amendment Does Not Bar Them, Plaintiffs Fail to State a Claim ................................. 16

    A.   Plaintiffs' First Claim Must Be Dismissed Because Plaintiffs Do Not Identify Any Protected Speech that SB 406 Prohibits .......... 17

i

B.    Plaintiffs' Second Claim Must Be Dismissed Because Plaintiffs Do Not Identify Anything Vague in SB 406 .....................21

C.    Plaintiffs' Third Claim Must Be Dismissed for the Same Reasons that the Second Claim Must Be Dismissed .........................25

CONCLUSION ................................................................................................26

STATEMENT OF RELATED CASES ..................................................................27

CERTIFICATE OF COMPLIANCE ....................................................................28

# TABLE OF AUTHORITIES

## <u>CASES</u>                                                                                    Page

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ............................................................................17

*Ass'n des Eleveurs de Canards et d'Oies du Quebec v. Harris*,
    729 F.3d 937 (9th Cir. 2013) ....................................................... 14, 15

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007) ............................................................................17

*Bingue v. Prunchak*,
    512 F.3d 1169 (9th Cir. 2008) ............................................................21

*Cal. Pro-Life Council, Inc. v. Getman*,
    328 F.3d 1088 (9th Cir. 2003) ........................................................8, 10

*Clapper v. Amnesty Int'l USA*,
    568 U.S. 398 (2013) ..............................................................................6

*Clark v. City of Seattle*,
    899 F.3d 802 (9th Cir. 2018) ..............................................................10

*Counterman v. Colorado*,
    600 U.S. 66 (2023) ..............................................................................19

*Culinary Workers Union v. Del Papa*,
    200 F.3d 614 (9th Cir. 1999) ..............................................................12

*DaimlerChrysler Corp. v. Cuno*,
    547 U.S. 332 (2006) ............................................................................11

*Eaves v. Bd. of Clark Cnty. Comm'rs*,
    96 Nev. 921, 620 P.2d 1248 (1980) ....................................................25

*Esquivel v. Fresno Cnty. Dep't of Soc. Servs.*, No. 22-16975,
    2023 WL 8014223 (9th Cir. Nov. 20, 2023) ........................................4

*Ex parte Young*,
    209 U.S. 123 (1908) .................................................................. 14, 15, 16

## CASES                                                                        Page

*Green v. Mansour*,
    474 U.S. 64 (1985)................................................................14

*Hafer v. Melo*,
    502 U.S. 21 (1991)................................................................15

*Holder v. Humanitarian Law Project*,
    561 U.S. 1 (2010)........................................................... 23, 24

*Humanitarian Law Project v. U.S. Treasury Dep't*,
    578 F.3d 1133 (9th Cir. 2009) ........................................ 21, 25

*In re Estate of Bethurem*,
    129 Nev. 869, 313 P.3d 237 (2013).....................................23

*Isaacson v. Mayes*,
    84 F.4th 1089 (9th Cir. 2023) ......................................... 10, 13

*Jones v. Allison*,
    9 F.4th 1136 (9th Cir. 2021) ............................................4, 5

*Laird v. Tatum*,
    408 U.S. 1 (1972).................................................................12

*Lopez v. Candaele*,
    630 F.3d 775 (9th Cir. 2010) ............................................9, 12

*Lujan v. Defs. of Wildlife*,
    504 U.S. 555 (1992).............................................................14

*Mont. Shooting Sports Ass'n v. Holder*,
    727 F.3d 975 (9th Cir. 2013) ...............................................4

*Nat'l Audubon Soc'y, Inc. v. Davis*,
    307 F.3d 835 (9th Cir. 2002) ..............................................16

*Nat'l Endowment for the Arts v. Finley*,
    524 U.S. 569 (1998).............................................................21

*Peardon v. Peardon*,
    65 Nev. 717, 201 P.2d 309 (1948)........................................24

iv

**CASES** **Page**

*Rincon Band of Mission Indians v. San Diego Cty.*,
　495 F.2d 1 (9th Cir. 1974) ...................................................................12

*Silvers v. Sony Pictures Ent., Inc.*,
　402 F.3d 881 (9th Cir. 2005) ...............................................................18

*Spokeo, Inc. v. Robins*,
　578 U.S. 330 (2016).................................................................................6

*Spoklie v. Montana*,
　411 F.3d 1051 (9th Cir. 2005) .............................................................16

*State v. Javier C.*,
　128 Nev. 536, 289 P.3d 1194 (2012)....................................................18

*Steckman v. Hart Brewing, Inc.*,
　143 F.3d 1293 (9th Cir. 1998) ...............................................................4

*Susan B. Anthony List v. Driehaus*,
　573 U.S. 149 (2014)...........................................................................7, 10

*Thomas v. Anchorage Equal Rights Comm'n*,
　220 F.3d 1134 (9th Cir. 2000) ...............................................................7

*Tingley v. Ferguson*,
　47 F.4th 1055 (9th Cir. 2022) ...........................................................8, 10

*Tyler v. Cuomo*,
　236 F.3d 1124 (9th Cir. 2000) ...............................................................4

*Unified Data Servs. LLC v. FTC*,
　39 F.4th 1200 (9th Cir. 2022) ........................................ 7, 8, 9, 10, 13

*United States v. Gilbert*,
　813 F.2d 1523 (9th Cir. 1987) ............................................... 20, 22, 23

*United States v. Gregg*,
　226 F.3d 253 (3d Cir. 2000)..................................................................17

## CASES                  Page

*United States v. Gwyther*,
 431 F.2d 1142 (9th Cir. 1970) ...............................................................22

*United States v. Hansen*,
 599 U.S. 762 (2023).............................................................. 17, 20

*United States v. Jae Gab Kim*,
 449 F.3d 933 (9th Cir. 2006) ...............................................................24

*United States v. Makowski*,
 120 F.3d 1078 (9th Cir. 1997) ...............................................................24

*United States v. Shill*,
 740 F.3d 1347 (9th Cir. 2014) ...............................................................23

*United States v. Williams*,
 553 U.S. 285 (2008)............................................................ 18, 21,

*Will v. Mich. Dep't of State Police*,
 491 U.S. 58 (1989)...............................................................14

*Wolfson v. Brammer*,
 616 F.3d 1045 (9th Cir. 2010) ................................................................6

*Yates v. United States*,
 574 U.S. 528 (2015)...............................................................23

*Ybarra v. Bastian*,
 647 F.2d 891 (9th Cir. 1981) ...............................................................16

*Younger v. Harris*,
 401 U.S. 37 (1971)...............................................................12

## STATUTES

42 U.S.C. § 1983 ...............................................................16

NRS 41.031(3) ...............................................................14

NRS 293.124(1) ...............................................................15

NRS 293.274(1) ................................................................3

## STATUTES
Page

NRS 293.705 ...............................................................................................2

NRS 293.705(1) ............................................................................... 2, 10, 19

NRS 293.705(4) ...........................................................................................2

NRS 293.705(6)(b) ........................................................................... 2, 18, 22

NRS 293B.330(4) .........................................................................................3

NRS 293B.353(1) .........................................................................................3

NRS 293B.354(1) .........................................................................................3

NRS 293B.380(2)(a) .....................................................................................3

NRS 293C.269(1) .........................................................................................3

NRS 293C.630(4) .........................................................................................3

## RULES

Fed. R. App. P. 28 ........................................................................................1

Fed. R. Civ. P. 12(b)(6) ..........................................................................5, 16

NAC 293.245(2)(a)(4) ..................................................................................3

NAC 293.356(2)(a)(1) ..................................................................................3

## CONSTITUTIONAL PROVISIONS

U.S. Const., Article III, § 2 ..........................................................................6

## OTHER AUTHORITIES

*Interference*, *Black's Law Dictionary* (12th ed. 2024) ...........................23

*Intimidation*, dictionary.com, https://tinyurl.com/y9d74uxb .................23

*Minutes of the Senate Committee on Legislative Operations and Elections*,
    82d Sess. (Nev. Apr. 11, 2023) https://tinyurl.com/SB406Mins ....................1, 2

## <u>OTHER AUTHORITIES</u>                                    **Page**

SB 406, 82nd Leg. Sess., (Nev. 2023).....................i, ii, 1, 2, 3, 5, 7, 8, 9, 10, 11, 13, 17, 18, 19, 20, 21, 22, 23, 24, 25

*Undue Influence*, *Black's Law Dictionary* (12th ed. 2024).....................................23

Defendants-Appellees Governor Joseph M. Lombardo and Secretary of State Francisco V. Aguilar ("Defendants") submit this Answering Brief pursuant to Federal Rule of Appellate Procedure 28.

## ISSUES PRESENTED

1.     Did the district court correctly determine that Plaintiffs-Appellants ("Plaintiffs") lack standing to challenge portions of Senate Bill 406 ("SB 406") of Nevada's 82nd Legislative Session, which criminalize certain conduct in connection with elections officials.

2.     If Plaintiffs have standing, does the Eleventh Amendment bar this lawsuit?

3.     If Plaintiffs have standing and the Eleventh Amendment does not bar this lawsuit, have Plaintiffs adequately pleaded a claim challenging the constitutionality of SB 406?

## STATEMENT OF THE CASE

The political climate surrounding elections since 2020 has been highly charged and divisive.  In the wake of extreme turnover in elections officials across Nevada, due in part to harassment and death threats, the Nevada Legislature adopted SB 406. *Minutes of the Senate Committee on Legislative Operations and Elections*, 82d Sess., 2–3, 12 (Nev. Apr. 11, 2023) (statements of Gabriel Di Chiara and Amy Burgans),  https://tinyurl.com/SB406Mins.    SB  406  is  designed  to  "provide

additional protection for election workers" and reverse the "unbelievable turnover of election officials in elected and administrative positions over the last four years." *Id.* at 2–3. It has since been codified as Nevada Revised Statute ("NRS") 293.705 and provides:

> 1.    It is unlawful for any person to use or threaten or attempt to use any force, intimidation, coercion, violence, restraint or undue influence with the intent to:
>    (a)    Interfere with the performance of the duties of any elections official relating to an election; or
>    (b)    Retaliate against any elections official for performing duties relating to an election.

NRS 293.705(1). The statute defines "elections official" as:

> (1)    The Secretary of State or any deputy or employee in the Elections Division of the Office of the Secretary of State who is charged with duties relating to an election;
> (2)    A registrar of voters, county clerk, city clerk or any deputy or employee in the elections division of a county or city who is charged with elections duties; or
> (3)    An election board officer or counting board officer.

NRS 293.705(6)(b). A person who violates section 1 is guilty of a category E felony. NRS 293.705(4).

Plaintiffs initiated their lawsuit challenging SB 406 in the United States District Court for the District of Nevada. Plaintiffs allege that they are former poll observers, ballot runners, election intake specialists, or ballot counting room observers. ER084 ¶¶ 66–70. They contend that SB 406 "obstruct[s] the purpose of election observers." ER077 ¶ 26.

2

Under Nevada law, members of the public can "observe the conduct of voting at a polling place," NRS 293.274(1), 293C.269(1), "the handling of ballots," NRS 293B.330(4), 293C.630(4), "the counting of ballots at a central counting place," NRS 293B.353(1), "the delivery, counting, handling and processing of ballots at a polling place, receiving center or central counting place," NRS 293B.354(1), and "the counting area where the computers are located during the period when ballots are being processed," NRS 293B.380(2)(a).

However, the ability to observe is not without limitation. For instance, poll observers cannot "[a]rgue for or against or challeng[e] any decisions of county or city election personnel," Nev. Admin. Code ("NAC") 293.245(2)(a)(4); and persons observing the processing and counting of ballots cannot "[t]alk[] to workers within the central counting place other than the county or city clerk or a person designated by the county or city clerk to address questions from observers," NAC 293.356(2)(a)(1). Thus, while volunteer observers are permitted to observe certain election processes, there is nothing that permits them to, for example, insist that elections officials take corrective measures, as Plaintiffs appear to argue. *See* ER082 ¶¶ 52–54. SB 406 in no way contradicts the purposes of election observer statutes.

Defendants Governor Lombardo and Secretary Aguilar are named in their official capacities. ER087 ¶¶ 85–88. Plaintiffs appear to challenge SB 406 on three

grounds: overbreadth under the U.S. Constitution, vagueness under the U.S. Constitution, and vagueness under the Nevada Constitution. Appellants' Opening Br. ("OB") at 1; ER088–94 ¶¶ 90–136.

Defendants moved to dismiss Plaintiffs' Second Amended Complaint based on lack of subject matter jurisdiction, Eleventh Amendment immunity, and for failure to state a claim. ER051–68. The district court granted Defendants' motion and dismissed the Second Amended Complaint with prejudice for lack of standing. ER006–14.

## STANDARD OF REVIEW

This Court reviews the district court's grant of "a motion to dismiss for lack standing de novo, construing the factual allegations in the complaint in favor of the plaintiffs." *Mont. Shooting Sports Ass'n v. Holder*, 727 F.3d 975, 979 (9th Cir. 2013) (citing *Tyler v. Cuomo*, 236 F.3d 1124, 1131 (9th Cir. 2000)).

The Court may affirm the district court's decision on any ground supported by the record, even if the district court relied on different grounds or reasoning. *See Jones v. Allison*, 9 F.4th 1136, 1139 (9th Cir. 2021); *Steckman v. Hart Brewing, Inc.*, 143 F.3d 1293, 1295 (9th Cir. 1998); *see also Esquivel v. Fresno Cnty. Dep't of Soc. Servs.*, No. 22-16975, 2023 WL 8014223, at *1–2 (9th Cir. Nov. 20, 2023) (affirming, based on a failure to state a claim, district court decision dismissing for lack of subject matter jurisdiction).

4

Grants of immunity to government officials and dismissal pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim are also reviewed de novo. *Jones*, 9 F.4th at 1139.

## SUMMARY OF ARGUMENT

The district court correctly dismissed this action. Plaintiffs' claims are not justiciable because Plaintiffs fail to allege any credible threat of prosecution in this pre-enforcement lawsuit. While Plaintiffs claim that they have self-censored and will no longer participate as elections observers, SB 406 does not proscribe general observation activities. Because Plaintiffs have not alleged any intention to engage in any activity that could subject them to possible prosecution, they have failed to establish an imminent or realistic threat of prosecution.

Even if Plaintiffs had alleged actionable activity, they sued the wrong Defendants. Neither Governor Lombardo nor Secretary Aguilar has a sufficiently direct connection to enforcement of SB 406. And Plaintiffs have failed to state any claim. Plaintiffs do not adequately allege that SB 406 is unconstitutionally overbroad because they cannot articulate any protected speech that SB 406 prohibits. Nor do Plaintiffs adequately allege that SB 406 is unconstitutionally vague because Plaintiffs have not pointed—and cannot point—to anything vague in SB 406.

5

# ARGUMENT

## I.     This Action Was Correctly Dismissed Because It Is Not Justiciable

Article III, § 2 of the U.S. Constitution limits federal court jurisdiction to "Cases" and "Controversies." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 337 (2016). "'One element of the case-or-controversy requirement' is that plaintiffs 'must establish that they have standing to sue.'" *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 408 (2013) (citations omitted).   To establish the irreducible constitutional minimum of standing, "[t]he plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo*, 578 U.S. at 338 (citations omitted).   The injury in fact must be "'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Id.* at 339 (citation omitted).

Federal jurisdiction is also limited by the doctrine of ripeness, which is designed "to separate matters that are premature for review because the injury is speculative and may never occur from those cases that are appropriate for federal court action." *Wolfson v. Brammer*, 616 F.3d 1045, 1057 (9th Cir. 2010) (citation omitted).

### A.     Plaintiffs' Claims Are Not Justiciable Because Plaintiffs Have Not Adequately Alleged a Credible Threat of Prosecution

A pre-enforcement plaintiff can satisfy the injury-in-fact requirement by alleging "an intention to engage in a course of conduct arguably affected with a

6

constitutional interest, but proscribed by a statute, and there exists a credible threat of prosecution thereunder." *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 159 (2014) (citation omitted). This Court looks to three factors to determine whether there is a credible threat of prosecution: "[1] whether the plaintiffs have articulated a concrete plan to violate the law in question, [2] whether the prosecuting authorities have communicated a specific warning or threat to initiate proceedings, and [3] the history of past prosecution or enforcement under the challenged statute." *Unified Data Servs. LLC v. FTC*, 39 F.4th 1200, 1210 (9th Cir. 2022) (citation omitted).

Plaintiffs argue that "[w]hether there was a credible threat of prosecution should not have been a deciding factor in the analysis of the [district court] since the newly passed SB 406 was not even ripe for enforcement for two months after the [d]istrict [c]ourt's disposition of this case." OB at 18. However, "[t]he constitutional component of the ripeness inquiry is often treated under the rubric of standing and, in many cases, ripeness coincides squarely with standing's injury in fact prong." *Thomas v. Anchorage Equal Rights Comm'n*, 220 F.3d 1134, 1138 (9th Cir. 2000). Whether this case should be analyzed as a question of standing or ripeness, the district court appropriately dismissed this case because Plaintiffs failed to adequately allege a credible threat of prosecution. *See, e.g.*, *Unified Data Servs. LLC*, 39 F.4th at 1211 (finding pre-enforcement plaintiffs did not have standing because they did not allege a credible threat of enforcement); *Thomas*, 220 F.3d at 1141

7

(finding pre-enforcement challenge was not constitutionally ripe because any threat of enforcement was not "reasonable or imminent").

### 1.    Plaintiffs Have Not Alleged Any Intention to Violate SB 406

Plaintiffs claim that, as a result of the passage of SB 406, they will not participate as poll or election observers.  ER071–72 ¶¶ 4, 8–9; ER084–85 ¶¶ 71–73.  "[S]elf-censorship alone," however, "is insufficient to show injury."  *Unified Data Servs.*, 39 F.4th at 1211 (citation omitted); *see also Cal. Pro-Life Council, Inc. v. Getman*, 328 F.3d 1088, 1095 (9th Cir. 2003) (A plaintiff may not "challenge the constitutionality of a statute on First Amendment grounds by nakedly asserting that his or her speech was chilled by the statute.  The self-censorship door to standing does not open for every plaintiff.").

Instead, a plaintiff claiming self-censorship must allege what they would have done but for the challenged law that would now subject them to prosecution; they must provide the "when, to whom, where, or under what circumstances" of their intended, but proscribed, conduct.[1]  *See Unified Data Servs.*, 39 F.4th at 1211 (citation omitted).  Stated differently, a self-censorship plaintiff must provide information about their concrete plans to violate a challenged law.  *See id.* at 1203–04

---

[1] Plaintiffs would not be required to provide the "when, to whom, where, or under what circumstances" they plan to violate the law if they had already violated the law in the past.  *Tingley v. Ferguson*, 47 F.4th 1055, 1068 (9th Cir. 2022) (citations omitted).  But Plaintiffs have not alleged that they violated the law in the past because merely participating as an election observer is not proscribed by SB 406.

(affirming dismissal for lack of subject matter jurisdiction where plaintiffs "provided virtually no information about [their] use or concrete plans to use soundboard technology in a manner that contravenes FTC regulations"); *Lopez v. Candaele*, 630 F.3d 775, 791, 794 (9th Cir. 2010) (finding self-censorship plaintiff did not have standing to bring a First Amendment challenge where he had not alleged or offered "concrete details . . . regarding his intent to engage in conduct expressly forbidden by the" challenged policy). Absent such detail, "a court is left with mere '"some day intentions,' which 'do not support a finding of the [required] "actual or imminent"' injury." *Unified Data Servs.*, 39 F.4th at 1211 (citation omitted).

Here, Plaintiffs allege only an insufficient, naked claim of self-censorship. They do not offer any information about conduct that they would have engaged in but that would now subject them to criminal prosecution under SB 406. SB 406 does not criminalize election observer activities, absent some use or attempted use of force, intimidation, coercion, violence, restraint, or undue influence coupled with an intent to interfere with or retaliate against an elections official performing their election duties. NRS 293.705(1). A mere intention to engage in observation activities is thus insufficient to show an imminent or realistic threat of prosecution. *See Unified Data Servs.*, 39 F.4th at 1211. Because Plaintiffs have not "outlined a concrete plan to engage in proscribed conduct," they have failed to show that they satisfy the first factor for a credible threat of prosecution. *See id.* at 1210–11 (citing

9

*Clark v. City of Seattle*, 899 F.3d 802, 813 (9th Cir. 2018)); *see also Driehaus*, 573 U.S. at 159 ("[A] plaintiff could bring a preenforcement suit when he 'has alleged an intention to engage in a course of conduct arguably affected with a constitutional interest, *but proscribed by a statute . . . .*" (emphasis added)); *Cal. Pro-Life Council*, 328 F.3d at 1095 ("[A] fear of prosecution will only inure if the plaintiff's intended speech arguably falls within the statute's reach.").

### 2. Plaintiffs Fail to Allege a Specific Warning or Threat to Enforce SB 406

The second factor in determining whether there is a credible threat of prosecution, a specific warning or threat to enforce the challenged law, also does not support finding any such credible threat.[2] *See United Data Servs.*, 39 F.4th at 1210. Plaintiffs rely on a September 29, 2020 tweet from Attorney General Aaron D. Ford relating to poll watching to argue there has been a threat of enforcement. *See* OB at 10–11, 18–19; ER071–72 ¶¶ 6–7; ER077 ¶ 29; ER079–81 ¶¶ 36–39, 43–45, 50;

---

[2] In the First Amendment context, "a plaintiff 'need only demonstrate that a threat of potential enforcement will cause him to self-censor.'" *Tingley*, 47 F.4th at 1068 (citation omitted). However, as discussed above, Plaintiffs have not alleged that they would have violated SB 406 had they not self-censored, and they thus fail to demonstrate that any potential for prosecution caused them to self-censor. Further, this case is unlike *Tingley* where Washington did not disavow enforcement. *See id.* Plaintiffs do not allege that Defendants prosecute crimes, and Defendants thus are improper parties to disavow enforcement. Regardless, standing must be established for each individual claim, *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 352 (2006), and for Plaintiffs' vagueness claim under the Fourteenth Amendment's Due Process Clause, whether there was a specific threat or warning of prosecution is relevant, *see Isaacson v. Mayes*, 84 F.4th 1089, 1100 (9th Cir. 2023).

ER085–86 ¶¶ 73, 78, 80–83; ER088 ¶ 91; ER090-091 ¶¶ 102, 131. The tweet states: "Trump also told 'his supporters' to 'go into the polls and watch very carefully.' But he wasn't talking about poll watching. He was talking about voter intimidation. FYI -- voter intimidation is illegal in Nevada. Believe me when I say it: You do it, and you will be prosecuted." ER079 ¶ 36.

The tweet pre-dates SB 406 by approximately two and half years and concerns *voter* intimidation, not elections official intimidation. Attorney General Ford further distinguished poll watching and voter intimidation and explained that the latter was illegal and would be prosecuted. There was no threat that legal poll watching would be prosecuted based on voter intimidation. There was also no statement that all poll watchers automatically were in violation of voter intimidation statutes.

Nor was there any "chilling effect on [Plaintiffs'] First Amendment rights to free speech" based on the tweet, as Plaintiffs contend. OB at 19–20. Plaintiffs allege that they intended to work "as poll observers, ballot runners, counting room observers or lawful election observers" prior to the passage of SB 406, so the tweet was immaterial to their assessment of a credible threat of prosecution. ER084 ¶ 71. In fact, Plaintiffs Beadles and Vanness allege that they participated as an election intake specialist and a ballot runner respectively in 2022, after the tweet, in addition to participating as public observers. ER084 ¶¶ 67 & n.8, 69 & n.9. Regardless, "[a]llegations of a subjective 'chill' are not an adequate substitute for a claim of

specific present objective harm or a threat of specific future harm." *Laird v. Tatum*, 408 U.S. 1, 13–14 (1972) (citation omitted); *Younger v. Harris*, 401 U.S. 37, 42 (1971) (Plaintiffs that "fe[lt] inhibited" in their speech were not appropriate plaintiffs where they did not claim "that they have ever been threatened with prosecution, that a prosecution is likely, or even that a prosecution is remotely possible.").

At absolute best, the tweet constitutes a general threat by non-party Attorney General Ford to enforce the laws which he (and not Defendants) is charged with administering. "But general threats by officials to enforce those laws which they are charged to administer do not create the necessary injury in fact." *Lopez*, 630 F.3d at 787 (cleaned up); *see also Rincon Band of Mission Indians v. San Diego Cty.*, 495 F.2d 1, 4 (9th Cir. 1974) (finding written statement that "State law, as well as the County ordinance, is quite specific relative to gambling, and all of the laws of San Diego, State, Federal and County, will be enforced within our jurisdiction" was a general threat); *cf. Culinary Workers Union v. Del Papa*, 200 F.3d 614, 616, 618 (9th Cir. 1999) (finding attorney general's "precise and exact" letter to plaintiff union to be a specific threat where the attorney general stated she would cause a statute criminalizing making derogatory statements about banks "to be enforced unless the union ceases distribution of" a handbill criticizing a bank).

### 3. Plaintiffs Do Not Allege Any History of Past Prosecution

While SB 406 was only recently enacted at the time of the filing of this lawsuit and there was "little need to show a 'history of past prosecution or enforcement,'" *Isaacson*, 84 F.4th at 1099, Plaintiffs' reliance on Attorney General Ford's 2020 tweet undercuts their claim of a credible threat of enforcement. Plaintiffs initiated their lawsuit nearly three years after that tweet, but they do not cite a single example of prosecution based on voter or elections official intimidation.

\* \* \*

At bottom, Plaintiffs' claims are not justiciable because they have failed to establish that prosecution is "imminent or realistic." *Unified Data Servs., LLC*, 39 F.4th at 1211. Without any allegation that Plaintiffs would have engaged in conduct proscribed by SB 406 or any relevant threat of enforcement, there can be no credible threat of prosecution.

### B. Plaintiffs' Claims Are Not Traceable to Defendants

Plaintiffs bear the burden of establishing "a causal connection between the injury and the conduct complained of—the injury has to be fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992) (cleaned up). The injury Plaintiffs claim is possible prosecution for violating SB 406. But Plaintiffs have not alleged that Defendants have any enforcement

13

power and have therefore failed to show that any potential injury could be fairly traced to Defendants' actions.

## II. The Eleventh Amendment Further Bars This Lawsuit Against Defendants

While the district court only reached the issue of subject matter jurisdiction, the Eleventh Amendment provides an independent ground for dismissing this action and for this Court's affirmance of the district court's decision.[3]

### A. Plaintiffs Named the Wrong Defendants

The Eleventh Amendment bars lawsuits in federal court against states, unless they consent to suit or Congress has abrogated the immunity. *Green v. Mansour*, 474 U.S. 64, 68 (1985). The immunity extends to state officials acting in their official capacity because a suit against them is considered a suit against the state itself. *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989). Nevada has not waived its Eleventh Amendment immunity. NRS 41.031(3).

Under *Ex parte Young*, 209 U.S. 123 (1908), an exception to Eleventh Amendment immunity exists that "allows citizens to sue state officers in their official capacities 'for prospective declaratory or injunctive relief . . . for their alleged violations of federal law.'" *Ass'n des Eleveurs de Canards et d'Oies du*

---

[3] Defendants raised Eleventh Amendment immunity in their motion to dismiss. ER059–60.

*Quebec v. Harris*, 729 F.3d 937, 943 (9th Cir. 2013) (citation omitted).[4] To fall under this exception, the state officer defendant "must have some connection with the enforcement of the act, or else it is merely making him a party as a representative of the state, and thereby attempting to make the state a party." *Ex parte Young*, 209 U.S. at 157. "That connection 'must be fairly direct; a generalized duty to enforce state law or general supervisory power over the persons responsible for enforcing the challenged provision will not subject an official to suit.'" *Eleveurs*, 729 F.3d at 943 (citation omitted).

Notably, a governor who only has a general duty to enforce a state's laws is entitled to Eleventh Amendment immunity. *Id.* The same would be true of the Secretary of State, who, under Nevada law, is responsible for executing and enforcing the election laws. *See* NRS 293.124(1). That is again a "general duty to enforce [the] law" and not the "fairly direct" connection to the law at issue that would be needed to overcome Eleventh Amendment immunity. *Eleveurs*, 729 F.3d at 943 (citation omitted). Moreover, Plaintiffs fail to allege that either Defendant has any

---

[4] This exception does not apply to claims for damages; "State officers sued for damages in their official capacity are not 'persons' for purposes of the suit because they assume the identity of the government that employs them." *Hafer v. Melo*, 502 U.S. 21, 27, 30 (1991) (explaining that "the Eleventh Amendment bars suits in federal court 'by private parties seeking to impose a liability which must be paid from public funds in the state treasury'"). While Plaintiffs' "Requested Relief" section does not include a request for damages, ER094–95, Plaintiffs otherwise refer to seeking damages, ER071; ER083 ¶ 61. To the extent Plaintiffs seek damages, their claims are barred by the Eleventh Amendment.

authority to bring a criminal action. Plaintiffs have therefore failed to establish an exception to the Eleventh Amendment's bar, and their first two claims brought pursuant to federal law must be dismissed. *See Nat'l Audubon Soc'y, Inc. v. Davis*, 307 F.3d 835, 847 (9th Cir. 2002) (barring suit against Governor and state Secretary of Resources under the Eleventh Amendment because there had been no showing they had requisite enforcement connection).

> **B.** **Plaintiffs' State-Law Claim is Entirely Barred by the Eleventh Amendment**

Plaintiffs' third claim asserts a violation of the Nevada Constitution. ER093–94 ¶¶ 125–36. That claim must be dismissed as barred by the Eleventh Amendment. *Spoklie v. Montana*, 411 F.3d 1051, 1060 (9th Cir. 2005) (holding that Eleventh Amendment barred claim of violation of right under Montana Constitution). *Ex parte Young* does not save the state-law claim; it "allows prospective relief against state officers only to vindicate rights under federal law." *Id.* 42 U.S.C. § 1983 similarly only applies to federal rights and cannot be the basis for a claim based on state law. *See Ybarra v. Bastian*, 647 F.2d 891, 892 (9th Cir. 1981).

> **III.** **Even if Plaintiffs' Claims Are Justiciable and the Eleventh Amendment Does Not Bar Them, Plaintiffs Fail to State a Claim**

Although the district court did not reach whether Plaintiffs stated any claim, dismissal was also appropriate pursuant to Fed. R. Civ. P. 12(b)(6) and this Court

16

may affirm on this independent basis.[5] "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

### A. Plaintiffs' First Claim Must be Dismissed Because Plaintiffs Do Not Identify Any Protected Speech that SB 406 Prohibits

Plaintiffs' first claim is a facial overbreadth challenge to SB 406 based on the First Amendment. ER088–90 ¶¶ 90–109. To succeed on their facial overbreadth challenge, Plaintiffs must "demonstrate[] that the statute 'prohibits a substantial amount of protected speech' relative to its 'plainly legitimate sweep.'" *United States v. Hansen*, 599 U.S. 762, 770 (2023) (citations omitted). "[A] law's unconstitutional applications must be realistic, not fanciful, and their number must be substantially disproportionate to the statute's lawful sweep." *Id.* (citations omitted). Notably, "[a]ctivities that injure, threaten, or obstruct are not protected by the First Amendment, whether or not such conduct communicates a message." *United States v. Gregg*, 226 F.3d 253, 267–68 (3d Cir. 2000) (citation omitted); *see Hansen*, 599 U.S. at 783 ("Speech intended to bring about a particular unlawful act has no social value; therefore, it is unprotected."). "Invalidation for overbreadth is strong

---

[5] Defendants raised that Plaintiffs failed to state a claim in their motion to dismiss. ER060–67.

medicine that is not to be casually employed." *United States v. Williams*, 553 U.S. 285, 293 (2008) (internal quotation marks and citation omitted).

"The first step in overbreadth analysis is to construe the challenged statute . . . ." *Id.* The challenged provisions of SB 406 prohibit individuals from taking specified threatening or intimidating actions with an intent to either interfere with an elections official's performance of duties or to retaliate against an elections official for performing his or her elections duties. The plainly legitimate sweep of SB 406 is therefore to prevent interruption of and interference with important elections-related work.

SB 406's application is sharply limited. First, SB 406 only applies when a person takes action in connection with an "elections official," as defined in NRS 293.705(6)(b). While Plaintiffs contend that the definition of elections official is vague and overbroad, *see* ER074–75 ¶¶ 16, 21, the list in NRS 293.705(6)(b) is exclusive. *See State v. Javier C.*, 128 Nev. 536, 541, 289 P.3d 1194, 1197 (2012) ("Nevada follows the maxim 'expressio unius est exclusion alterius,' the expression of one thing is the exclusion of another."); *Silvers v. Sony Pictures Ent., Inc.*, 402 F.3d 881, 885 (9th Cir. 2005) ("The doctrine of *expressio unius est exclusion alterius* 'as applied to statutory interpretation creates a presumption that when a statute designates certain persons, things, or manners of operation, all omissions should be understood as exclusions.'").

18

Second, SB 406 requires a defendant to have the specific intent to either interfere with an elections official's performance of duties or retaliate against an elections official for his or her performance of duties. NRS 293.705(1). A person who tries to unduly influence an elections official with an intent to cause the elections official to change the contents of his will or sell her business, for instance, would not be subject to criminal liability under SB 406. And conversely, an intent to interfere alone is also not sufficient to run afoul of SB 406. Nothing in SB 406 precludes an observer from confronting an elections official, so long as the observer does not threaten to use force, intimidation, etc.

Third, the Supreme Court has addressed the *mens rea* requirement for true threats of violence, which do not enjoy First Amendment protection. *Counterman v. Colorado*, 600 U.S. 66, 72 (2023). In *Counterman*, the Court held that Colorado was required to show that a defendant was reckless in making true threats, i.e., that the defendant was "aware 'that others could regard his statements as' threatening violence and 'deliver[ed] them anyway,'" to criminally prosecute the defendant. *Id.* at 79, 82 (citation omitted). This holding provides an additional limitation on SB 406's application.

Finally, nothing in SB 406 shifts the burden of proving scienter to a defendant. *See* ER077 ¶ 28; ER082 ¶ 55; ER090 ¶ 104; ER092 ¶ 119. Specific intent is an

element of the crime that the prosecution must prove beyond a reasonable doubt. *United States v. Gilbert*, 813 F.2d 1523, 1530 (9th Cir. 1987).

Plaintiffs' inability to establish overbreadth is evident in the examples they cite purporting to show that protected speech is criminalized. Plaintiffs posit, for instance, that a "Rover" who confronts a ballot inspector over perceived wrongful action, "with the intent to have that wrongful conduct corrected" would be subject to criminal liability. ER078 ¶ 30. Plaintiffs also posit a scenario inviting supposed liability where an individual confronts another "with an intent to correct." ER078 ¶ 31. And Plaintiffs reference taking corrective actions opening the door to liability. ER082 ¶ 54. SB 406 requires an intent to interfere or retaliate, not to correct, and to support their overbreadth challenge, Plaintiffs must allege specific examples of protected speech filtered through these intents. *See Hansen*, 599 U.S. at 782. None of Plaintiffs' examples would meet the requirements for liability under SB 406. A calm and rational discussion with an elections official to explain a perceived wrong is perfectly permissible. What Plaintiffs may not do under SB 406 is, for example, threaten to injure an elections official to cause the elections official to perform his or her duties differently. And as noted above, Plaintiffs have not alleged that they intend to engage in such proscribed conduct.

**B.    Plaintiffs' Second Claim Must Be Dismissed Because Plaintiffs Do Not Identify Anything Vague in SB 406**

Plaintiffs' second claim asserts a facial challenge of SB 406 based on vagueness under the Due Process Clause of the Fourteenth Amendment.[6]  ER091–92 ¶¶ 110–24. The void-for-vagueness doctrine applies when a criminal law "fails to provide a person of ordinary intelligence fair notice of what is prohibited, or is so standardless that it authorizes or encourages seriously discriminatory enforcement." *Williams*, 553 U.S. at 304 (citations omitted).   "When a statute clearly implicates free speech rights, it will survive a facial challenge so long as it is clear what the statute proscribes in the vast majority of its intended applications." *Humanitarian Law Project v. U.S. Treasury Dep't*, 578 F.3d 1133, 1146 (9th Cir. 2009) (internal quotation marks and citation omitted).  In assessing whether a law is vague, "perfect clarity and precise guidance have never been required." *Williams*, 553 U.S. at 304 (citation omitted).  Nor does the ability to envision close cases render a statute vague. *Id.* at 305.  As with a facial overbreadth challenge, facial invalidation based on vagueness "is, manifestly, strong medicine" and should be employed "sparingly and only as a last resort." *See Nat'l Endowment for the Arts v. Finley*, 524 U.S. 569, 580 (1998) (citations omitted).

---

[6] The heading for the second claim refers to the Fifth Amendment, but it has no application here.  ER091.  The Fifth Amendment's Due Process Clause applies only to the federal government. *Bingue v. Prunchak*, 512 F.3d 1169, 1174 (9th Cir. 2008).

Plaintiffs claim that SB 406 does not provide clear definitions. *See* ER092 ¶ 117. They appear to take issue with the terms "elections official," "intimidation," "undue influence," and "interfere." ER074–75 ¶¶ 16, 21; ER077 ¶ 26; ER084–85 ¶ 72; ER094 ¶ 134. None of those terms are unconstitutionally vague.

Plaintiffs allege that they do not know who qualifies as an "elections official." ER074–75 ¶¶ 16, 21. As previously discussed, "elections officials" are only those individuals specifically identified in NRS 293.705(6)(b). Elections observers are not "elections officials," regardless of Plaintiffs' attempts to equate them. *E.g.*, ER071 ¶ 1; ER075–77 ¶¶ 23, 25. Relatedly, Plaintiffs also appear to claim that the lack of identification of individuals exempt from SB 406 somehow renders the bill vague. ER075 ¶ 21. It does not. No one is exempt. If a person takes any of the actions specified in SB 406 to interfere with or retaliate against an elections official, that person is in violation of SB 406, regardless of whether they themselves are an elections official. There is nothing vague about it; if anything, the lack of exemption makes the statute *less* vague.

Next, "intimidate" and "interfere" in criminal statutes are not void for vagueness. *Gilbert*, 813 F.2d at 1530 (concluding "intimidate" in a criminal statute did not render the unconstitutionally vague); *United States v. Gwyther*, 431 F.2d 1142, 1144 n.2 (9th Cir. 1970) ("'[I]nterfere' has such a clear, specific and well-known meaning as not to require more than the use of the word[] [itself] in a criminal

22

statute."). And "legislation which proscribes the use of force or the threat of force," like SB 406, "should not be found to be void for vagueness." *Gilbert*, 813 F.2d at 1530. The terms also have plain and ordinary meanings, i.e., dictionary definitions, that save them from any vagueness challenge. *See Yates v. United States*, 574 U.S. 528, 537 (2015); *United States v. Shill*, 740 F.3d 1347, 1351 (9th Cir. 2014). "Intimidation" and "interfere" have straightforward dictionary definitions that are understandable by Nevadans of ordinary intelligence. *See, e.g.*, *Intimidation*, dictionary.com, https://tinyurl.com/y9d74uxb ("[T]he act or process of attempting to force or deter an action by inducing fear."); *Interference*, *Black's Law Dictionary* (12th ed. 2024) ("The act or process of obstructing normal operations or intervening or meddling in the affairs of others.").

Finally, with respect to "undue influence," courts may look to "settled legal meanings" in determining whether a term is vague. *Holder v. Humanitarian Law Project*, 561 U.S. 1, 20 (2010) (citations omitted). Undue influence has a settled legal meaning. It is "[t]he improper use of power or trust in a way that deprives a person of free will and substitutes another's objective; the exercise of enough control over another person that a questioned act by this person would not have otherwise been performed, the person's free agency having been overmastered." *Undue Influence*, *Black's Law Dictionary* (12th ed. 2024); *see also In re Estate of Bethurem*, 129 Nev. 869, 874, 313 P.3d 237, 241 (2013) (undue influence established when

"the influence . . . destroy[ed] the free agency" of another); *Peardon v. Peardon*, 65 Nev. 717, 767, 201 P.2d 309, 333 (1948) (explaining that undue influence applies "where influence is acquired and abused, or where confidence is reposed and betrayed").

Plaintiffs also take issue with the supposed burden-shifting of the proof of scienter. ER092 ¶ 119. But that has nothing to do with vagueness and, as discussed above, the burden of proving all elements of a charged offense rests with the prosecution. Plaintiffs further claim that "SB 406's potential to criminalize innocent conduct makes it vague in defining the conduct it criminalizes." ER079 ¶ 35. This is not a proper basis for challenging a statute for vagueness. Rather, Plaintiffs appear to be confusing overbreadth and vagueness; a "vagueness challenge does not turn on whether a law applies to a substantial amount of protected expression." *Holder*, 561 U.S. at 20.

SB 406's intent requirements further mitigate any remote possibility of vagueness. *See United States v. Jae Gab Kim*, 449 F.3d 933, 943 (9th Cir. 2006); *United States v. Makowski*, 120 F.3d 1078, 1081 (9th Cir. 1997). This is because Plaintiffs can base their behavior on their own factual knowledge of the situation and avoid violating the law. *Jae Gab Kim*, 449 F.3d at 943. Taken together, SB 406 is clear in what it "proscribes 'in the vast majority of its intended applications.'"

24

*Humanitarian Law Project*, 578 F.3d at 1146 (citation omitted).  Plaintiffs have not pointed to a single example that suggests otherwise.[7]

Because Plaintiffs fail to support their request for the strong medicine of facial invalidation, their second claim should be dismissed.

### C.    Plaintiffs' Third Claim Must Be Dismissed for the Same Reasons that the Second Claim Must Be Dismissed

Plaintiffs' third claim appears to be a vagueness challenge based on the Nevada Constitution's due process clause.[8]  ER093–94 ¶¶ 125–36.  As discussed above, this claim is absolutely barred by the Eleventh Amendment.  Even if it were not, Nevada's vagueness analysis is similar to the federal vagueness analysis, and the third claim would fail for the same reasons Plaintiffs' second claim fails.  *See Eaves v. Bd. of Clark Cnty. Comm'rs*, 96 Nev. 921, 923, 620 P.2d 1248, 1249–50 (1980).

---

[7] As discussed above, the only examples Plaintiffs give would not establish liability under SB 406.

[8] While Plaintiffs assert that their third cause of action is based on vagueness as well as overbreadth, OB at 1, their Second Amended Complaint does not reference the Nevada Constitution's free speech clause, Nev. Const. art. 1, § 9.  *See* ER093–94 ¶¶ 125–36.

## CONCLUSION

For the foregoing reasons, the Court should affirm the district court's dismissal of this action.

DATED this 15th day of August, 2024.

AARON D. FORD
Attorney General

By:    /s/ *Laena St-Jules**
         LAENA ST-JULES (Bar No. 15156)
         Senior Deputy Attorney General

         *Attorneys for Secretary Aguilar*

         * Attestation: All other parties on whose behalf this filing is submitted concur in the filing's content

AARON D. FORD
Attorney General

By:    /s/ *Jessica E. Whelan*
         JESSICA E. WHELAN (Bar No. 14781)
         Deputy Solicitor General

         *Attorneys for Governor Lombardo*

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

## Form 17. Statement of Related Cases Pursuant to Circuit Rule 28-2.6

*Instructions for this form:*
*http://www.ca9.uscourts.gov/forms/form17instructions.pdf*

**9th Cir. Case Number(s)** _____

The undersigned attorney or self-represented party states the following:

[X] I am unaware of any related cases currently pending in this court.

[ ] I am unaware of any related cases currently pending in this court other than the case(s) identified in the initial brief(s) filed by the other party or parties.

[ ] I am aware of one or more related cases currently pending in this court. The case number and name of each related case and its relationship to this case are:

**Signature** */s/ Laena St-Jules*_____ **Date** August 15, 2024

27

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

### Form 8. Certificate of Compliance for Briefs

*Instructions for this form:*
*http://www.ca9.uscourts.gov/forms/form08instructions.pdf*

**9th Cir. Case Number(s)** 24-2910

I am the attorney or self-represented party.

**This brief contains 6,055 words,** excluding the items exempted by Fed. R. App. P. 32(f). The brief's type size and typeface comply with Fed. R. App. P. 32(a)(5) and (6).

I certify that this brief *(select only one)*:

[ x ] complies with the word limit of Cir. R. 32-1.

[ ] is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-1.

[ ] is an **amicus** brief and complies with the word limit of Fed. R. App. P. 29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).

[ ] is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.

[ ] complies with the longer length limit permitted by Cir. R. 32-2(b) because *(select only one)*:
    [ ] it is a joint brief submitted by separately represented parties;
    [ ] a party or parties are filing a single brief in response to multiple briefs; or
    [ ] a party or parties are filing a single brief in response to a longer joint brief.

[ ] complies with the length limit designated by court order dated _____.

[ ] is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).

**Signature** */s/ Laena St-Jules*          **Date** August 15, 2024
*(use "*s/[typed name]*" to sign electronically-filed documents)*

28