No. 24-2910

# In the United States Court of Appeals for the Ninth Circuit

SUSAN VANNESS, ALEXANDREA SLACK, MARTIN WALDMAN, AND ROBERT BEADLES,

*Plaintiffs-Appellants,*

v.

FRANCISCO V. AGUILAR, in his official capacity as Nevada Secretary of State, AND JOSEPH M. LOMBARDO, in his official capacity as Governor of the State of Nevada,

*Defendants-Appellees.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEVADA
District Court No. 2:23-cv-01009-CDS-MDC (Silva, J.)

PROPOSED *AMICUS CURIAE* BRIEF OF
THE AMERICAN CENTER FOR LAW AND JUSTICE,
SUPPORTING APPELLANTS

JORDAN SEKULOW
DONN PARSONS
BENJAMIN P. SISNEY
NATHAN J. MOELKER
AMERICAN CENTER FOR LAW & JUSTICE
201 Maryland Ave., NE
Washington, DC 20002
Phone: (202) 546-8890
Email: bsisney@aclj.org
*Counsel for Amicus Curiae*

November 11, 2024

## CORPORATE DISCLOSURE STATEMENT

The American Center for Law and Justice ("ACLJ") submits this corporate disclosure statement pursuant to Federal Rules of Appellate Procedure 26.1 and 29. The ACLJ is a non-profit legal corporation dedicated to the defense of constitutional liberties secured by law. The ACLJ has no parent corporation and issues no stock.

## TABLE OF CONTENTS                                    *Page*

CORPORATE DISCLOSURE STATEMENT ...............................................C - I-1

TABLE OF AUTHORITIES .................................................................... ii

INTEREST OF *AMICUS* ..................................................................... 1

SUMMARY OF ARGUMENT ................................................................. 2

ARGUMENT ........................................................................................ 4

    I.    Appellants Have Standing to Bring Their First Amendment
    Claims to Challenge the Pre-Enforcement of a Law that Plausibly
    Chills Their First Amendment Activity. ............................................ 4

        A.    A Pre-enforcement Challenge is Proper, Even for a Law That Has
        Not Yet Been Directly Enforced, When It Threatens First
        Amendment Rights. .......................................................... 5

        B.    Appellants Have Alleged a Credible Threat of Prosecution in the
        Face of Vagueness and Overbreadth............................................ 11

        C.    Appellants Have Standing and a Plausible Claim By Pointing to the
        Wide Scope of Conduct Affected by the Statute; That Breadth Is
        Not Saved by the Statute's Mens Rea Component. ....................... 14

CONCLUSION................................................................................... 19

i

## TABLE OF AUTHORITIES      *Page(s)*

**Cases**

*Ariz. Right to Life Political Action Comm. v. Bayless*,
   320 F.3d 1002 (9th Cir. 2003) ........................................................ 4, 12

*Babbitt v. United Farm Workers Nat'l Union*,
   442 U.S. 289, (1979) .............................................................. 8, 10, 11

*Beals v. Virginia Coalition for Immigrant Rights,*
   SC No. 24A407 (2024) ..................................................................... 1

*Blanchette v. Connecticut Gen. Ins. Corps.*,
   419 U.S. 102 (1974). ......................................................................... 7

*Bland v. Fessler*,
   88 F.3d 729 (9th Cir. 1996) ............................................................. 5

*Bolingbrook v. Citizens Utilities* Co.,
   864 F.2d 481 (7th Cir. 1988) ......................................................... 17

*Cal. Pro-Life Council, Inc. v. Getman*,
   328 F.3d 1088 (9th Cir. 2003) .................................................. 11, 12

*Clapper v. Amnesty Int'l USA*,
   568 U.S. 398 (2013) ............................................................... 5, 7, 18

*Clark v. City of Seattle*,
   899 F.3d 802 (9th Cir. 2018) .......................................................7, 8

*Dombrowski v. Pfister*,
   380 U.S. 479 (1965) ......................................................................... 5

*Fischer v. United States*,
   144 S. Ct. 2176 (2024).......................................................... 1, 15, 17

*Isaacson v. Mayes,*
    84 F.4th 1089 (9th Cir. 2023) ............................................................... 10

*Lamb's Chapel v. Center Moriches Sch. Dist.,*
    508 U.S. 384 (1993) ............................................................................... 1

*Lopez v. Candaele,*
    630 F.3d 775 (9th Cir. 2010) ................................................................. 4

*LSO, Ltd. v. Stroh,*
    205 F.3d 1146 (9th Cir. 2000) ........................................................... 4, 7

*Lujan v. Defenders of Wildlife,*
    504 U.S. 555 (1992) ......................................................................... 8, 18

*Lujan v. National Wildlife Federation,*
    497 U.S. 871 (1990) ............................................................................... 8

*Majors v. Abell,*
    317 F.3d 719 (7th Cir. 2003) ............................................................... 12

*McConnell v. FEC,*
    540 U.S. 93 (2003) ................................................................................. 1

*McDonnell v. United States,*
    579 U.S. 550 (2016) ............................................................................... 1

*Muskrat v. United States,*
    219 U.S. 346 (1911) ............................................................................... 5

*Protectmarriage.com-Yes on 8 v. Bowen,*
    752 F.3d 827 (9th Cir. 2014) ........................................................... 3, 12

*Spokeo, Inc. v. Robins,*
    578 U.S. 330 (2016). ............................................................................. 8

*Steffel v. Thompson,*
    415 U.S. 452 (1974) ......................................................................... 10, 11

iii

*Susan B. Anthony List v. Driehaus*,
   573 U.S. 149 (2014) ........................................................ 9, 11

*Thole v. U.S. Bank N.A.*,
   590 U.S. 538 (2020) ........................................................ 5

*Tingley v. Ferguson*,
   47 F.4th 1055 (9th Cir. 2022) ....................................... 3, 12

*Trump v. Anderson*,
   601 U.S. 100 (2024) ........................................................ 1

*Unified Data Servs., LLC v. FTC*,
   39 F.4th 1200 (9th Cir. 2022) ....................................... 6

*United States v. Fischer*,
   64 F.4th 329 (D.C. Cir. 2023)........................................ 15, 16

*United States v. N.*,
   910 F.2d 843 (D.C. Cir. 1990)........................................ 16

*Virginia v. American Booksellers Ass'n, Inc.*,
   484 U.S. 383 (1988) ........................................................ 6

**Constitutional Provisions**

U.S. Const. Art. III, §§1, 2........................................................ 5

**Statutes**

18 U.S.C. § 1512................................................................ 15, 17, 18

18 U.S.C. § 1515................................................................ 15

NRS § 293.705........................................................ 2, 3, 9, 13, 14, 18

## INTEREST OF *AMICUS*[1]

The American Center for Law and Justice ("ACLJ") is an organization dedicated to the defense of constitutional liberties secured by law, including the right to free speech and advocacy. ACLJ attorneys have appeared often before the Supreme Court as counsel for parties, *e.g.*, *Trump v. Anderson*, 601 U.S. 100 (2024); *McConnell v. FEC*, 540 U.S. 93 (2003) (unanimously holding that minors enjoy the protection of the First Amendment); *Lamb's Chapel v. Center Moriches Sch. Dist.*, 508 U.S. 384 (1993) (unanimously holding that denying a church access to public school premises to show a film series on parenting violated the First Amendment); or as *amicus curiae*, *e.g.*, *Republican National Committee v. Genser*, SC No. 24A408 (2024); *Beals v. Virginia Coalition for Immigrant Rights,* SC No. 24A407 (2024); *Fischer v. United States*, 144 S. Ct. 2176 (2024); *McDonnell v. United States*, 579 U.S. 550 (2016). The ACLJ files this brief on behalf of those – like Appellants here – whose First Amendment rights are chilled by unconstitutional laws. In *amicus curiae*'s view, it is imperative they have an opportunity to challenge the laws that do so in court.

---

[1] Appellants' counsel consented to the filing of this *amicus* brief; Appellees' counsel did not provide consent. No party's counsel in this case authored this brief in whole or in part. No party or party's counsel contributed any money intended to fund preparing or submitting this brief. No person, other than *amicus*, its members, or its counsel contributed money that was intended to fund preparing or submitting this brief.

1

## SUMMARY OF ARGUMENT

The doctrine of standing does not prevent those whose First Amendment rights have been threatened from pursuing a remedy. When a threatened law implicates First Amendment rights, this Court has regularly reiterated that the inquiry leans dramatically toward a finding of standing. This Court should apply this principle to address the First Amendment issues raised by Appellants.

The Supreme Court has made clear that parties can challenge the potential enforcement of laws before their actual application. Appellants that have alleged an actual and well-founded fear that a law will be enforced against them have a right to challenge the law before its enforced. This is crucial when it comes to the First Amendment and the threat of self-censorship. Appellants simply need to allege conduct arguably within the ambit of a statute and that a genuine threat of prosecution exists, to seek to hold the government accountable for laws that potentially infringe upon their right to speak. Appellants are not required to be actually convicted before the courts address the claims that they bring; a credible threat that they will be affected by a law suffices. This pre-enforcement review is a necessary safeguard to ensure that First Amendment rights are not improperly chilled by the enforcement of vague prohibitions.

The Appellants allege that SB 406, now codified as NRS § 293.705(1), chills

2

their First Amendment rights by vaguely imposing new criminal penalties. All that is required for standing in a pre-enforcement challenge to laws that threaten the First Amendment is for the plaintiff to demonstrate "'that a threat of potential enforcement will cause him to self-censor.'" *Tingley v. Ferguson*, 47 F.4th 1055, 1068 (9th Cir. 2022) (quoting *Protectmarriage.com-Yes on 8 v. Bowen*, 752 F.3d 827, 839 (9th Cir. 2014)).  Appellants simply are not required to prove the criminal cases against them under SB 406 before they can challenge its enforcement. They have alleged that their plans for speech have been chilled. This allegation suffices for standing, and they need not prove that their conduct would with certainty constitute a violation of the statute. On the contrary, Appellants cannot specify how their conduct will violate the statute when they do not know what conduct might do so, and their argument that the law's prohibitions are vague is the crux of this case.

Finally, the Appellants' allegations about the breadth of the statute are not redressed by the statute's mens rea component. The actus reus of SB 406 threatens First Amendment rights by leaving broad and undefined what acts are prohibited by the statute. An intent requirement does not save this overly broad statute; the acts prohibited by the statute are still sufficiently vague that the statute chills the exercise of First Amendment rights. As the Supreme Court recently emphasized in *Fischer v. United States*, laws must be carefully defined in the scope of their prohibitions to

3

avoid First Amendment concerns. An intent requirement cannot redress this problem or mitigate the possibility of vagueness, because the statute may still chill speech by leaving uncertain and ambiguous what actions are unlawful.

## ARGUMENT

**I.    Appellants Have Standing to Bring Their First Amendment Claims to Challenge the Pre-Enforcement of a Law that Plausibly Chills Their First Amendment Activity.**

When First Amendment rights are threatened, the doctrine of standing poses no obstacle to the protection of constitutional rights. On the contrary, this Court has emphasized that "First Amendment cases raise 'unique standing considerations,'" *Lopez v. Candaele*, 630 F.3d 775, 781 (9th Cir. 2010) (quoting *Ariz. Right to Life Political Action Comm. v. Bayless*, 320 F.3d 1002, 1006 (9th Cir. 2003)), favoring allowing plaintiffs their day in court and resulting in a "lowered threshold for establishing standing." *Id.* In fact, "when the threatened enforcement effort implicates First Amendment rights, the inquiry tilts dramatically toward a finding of standing." *LSO, Ltd. v. Stroh*, 205 F.3d 1146, 1155 (9th Cir. 2000). This Court should review the district court's standing decision here by applying the "tilt" imposed by the First Amendment claims being asserted; when First Amendment rights are chilled, the people affected have a right to contest the laws that do the chilling.

4

First Amendment rights are far too important for there not to be a remedy for their violation. As this Court has emphasized, "[t]hat one should not have to risk prosecution to challenge a statute is especially true in First Amendment cases, 'for free expression - of transcendent value to all society, and not merely to those exercising their rights - might be the loser.'" *Bland v. Fessler*, 88 F.3d 729, 736-37 (9th Cir. 1996) (quoting *Dombrowski v. Pfister*, 380 U.S. 479, 486 (1965)).

### A.    A Pre-enforcement Challenge is Proper, Even for a Law That Has Not Yet Been Directly Enforced, When It Threatens First Amendment Rights.

Article III of the Constitution vests "[t]he judicial Power of the United States" in the federal courts and specifies that it shall extend to enumerated categories of "Cases" and "Controversies." U.S. Const. Art. III, §§1, 2. This power is a power to review lawsuits "instituted according to the regular course of judicial procedure." *Thole v. U.S. Bank N.A.*, 590 U.S. 538, 547 (2020) (Thomas, J., concurring).(quoting *Muskrat v. United States*, 219 U.S. 346, 356 (1911)). It is a well-established legal principle that the requirements for standing do not limit people to suing only for injuries that they have already experienced; allegations of future injury are sufficient to provide a plaintiff with standing if there is a "'substantial risk' that the harm will occur." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 414 n.5 (2013).

This doctrine, of particular importance in the First Amendment context,

ensures that parties can challenge the potential enforcement of laws before their actual application when those laws threaten constitutional rights. *See Virginia v. American Booksellers Ass'n, Inc.*, 484 U.S. 383, 386, 392-93 (1988). In *American Booksellers*, Virginia argued that plaintiffs lacked standing because "plaintiffs' challenge was premature, [having] been made before the statute became effective." *Id.* at 392. The Supreme Court emphatically rejected the argument, making clear that plaintiffs may bring pre-enforcement challenges before a law is implemented, and explained:

> We are not troubled by the pre-enforcement nature of this suit. The State has not suggested that the newly enacted law will not be enforced, and we see no reason to assume otherwise. We conclude that plaintiffs have alleged an actual and well-founded fear that the law will be enforced against them. Further, the alleged danger of this statute is, in large measure, one of self-censorship; a harm that can be realized even without actual prosecution.

*Id.* at 393. That threat of self-censorship is at the core of the protections of the First Amendment and accordingly, the Supreme Court has left no doubt that individuals must be able to challenge laws before those laws are enforced against them.

Generally, this Court looks to three crucial factors in order to determine standing in a pre-enforcement challenge: "[1] whether the plaintiffs have articulated a concrete plan to violate the law in question, [2] whether the prosecuting authorities have communicated a specific warning or threat to initiate proceedings, and [3] the

history of past prosecution or enforcement under the challenged statute." *Unified Data Servs., LLC v. FTC*, 39 F.4th 1200, 1210 (9th Cir. 2022) (quoting *Clark v. City of Seattle*, 899 F.3d 802, 813 (9th Cir. 2018)). But while this Court uses these factors, they cannot and do not supersede the Supreme Court's standard. No factor replaces the Supreme Court's test or prevents plaintiffs from challenging laws before they are enforced. In fact, this Court has also carefully acknowledged "that several unpredictable factors may determine whether an actual controversy involving the plaintiff and the challenged law will ever come about." *LSO, Ltd.*, 205 F.3d at 1154.

Standing to challenge a law before the law is implemented is crucial to ensure that vague laws do not chill First Amendment rights by their very existence. That threat exists regardless of specific prosecutions. The Supreme Court has explained:

> Because the decision to instigate a criminal prosecution is usually discretionary with the prosecuting authorities, even a person with a settled intention to disobey the law can never be sure that the sanctions of the law will be invoked against him. Further, whether or not the injury will occur is to some extent within the control of the complaining party himself, since he can decide to abandon his intention to disobey the law. For these reasons, the maturity of such disputes for resolution before a prosecution begins is decided on a case-by-case basis, by considering the likelihood that the complainant will disobey the law, the certainty that such disobedience will take a particular form, any present injury occasioned by the threat of prosecution, and the likelihood that a prosecution will actually ensue.

*Blanchette v. Connecticut Gen. Ins. Corps.*, 419 U.S. 102, 143 n. 29 (1974).

The Supreme Court has made very clear that plaintiffs do not have to

"demonstrate that it is literally certain that the harms they identify will come about."
*Clapper*, 568 U.S. at 414 n. 5. The danger need not be certain or irrefutable, just
"realistic." *Babbitt v. United Farm Workers Nat'l Union*, 442 U.S. 289, 298 (1979).
Moreover, at the initial pleading stage, a plaintiff need simply allege these potential
injuries, not prove them in every detail: "at the pleading stage, general factual
allegations of injury resulting from the defendant's conduct may suffice, for on a
motion to dismiss we 'presume that general allegations embrace those specific facts
that are necessary to support the claim.'" *Lujan v. Defenders of Wildlife*, 504 U.S.
555, 561 (1992) (quoting *Lujan v. National Wildlife Federation*, 497 U.S. 871, 889
(1990)).

The three-factor test this Court has adopted does not and cannot change the
fact that Appellants simply need to allege conduct "arguably" within the ambit of a
statute, and that a "a genuine threat of imminent prosecution exists." *City of Seattle*,
899 F.3d at 813. Appellants are not required to have their injury fully completed
before the Court may address the claims that they bring; a credible threat that they
will be affected by a law suffices. This Court's factor test should remain an actual
"factor" test and not become an element test where each item is required. A factor
test, by definition, does not require each factor as a requisite element to establish its
standard. The three mandatory requirements for standing are injury in fact,

8

traceability, and redressability. *Spokeo, Inc. v. Robins*, 578 U.S. 330, 337 (2016). The three factors that this Court utilizes are a tool to flesh out that constitutional minimum, not a replacement.

In particular, the third factor this Court utilizes, past prosecution, is irrelevant here and this Court should completely set it aside. As Appellants point out in their appeal, while SB 406 passed in Nevada's Legislature on May 30, 2023, at the time the Decision and Order below was entered on April 8, 2024, there had been no elections in the State of Nevada to trigger the actual enforcement of SB 406. There could not be any history of past prosecution or enforcement of SB 406 whatsoever.

In response, Appellees argue that this lack of past prosecution could instead be a threat to the ripeness of Appellants' case. But as discussed above, many pre-enforcement cases have survived review in this Court and the Supreme Court with no suggestion that the laws being challenged must be actively enforced against someone before that individual's dispute over that law is ripe. Courts have regularly rejected that assertion. On the contrary, if past prosecution were a requisite for bringing a lawsuit, then there would be direct tension with the Supreme Court's warning that "an actual arrest, prosecution, or other enforcement action is not a prerequisite to challenging the law." *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158 (2014).

9

A lawsuit is not made unripe because a law has yet to be enforced. On the contrary, the Supreme Court has made emphatically clear that a lawsuit may be ripe to challenge a law that threatens First Amendment speech, even if the law had not yet been enforced.

> Appellants maintain that the criminal penalty provision has not yet been applied and may never be applied to commissions of unfair labor practices, including forbidden consumer publicity. But, as we have noted, when fear of criminal prosecution under an allegedly unconstitutional statute is not imaginary or wholly speculative a plaintiff need not "first expose himself to actual arrest or prosecution to be entitled to challenge [the] statute.'"

*Babbitt*, 442 U.S. at 302 (quoting *Steffel v. Thompson*, 415 U.S. 452, 459 (1974)).

*Babbitt* clearly rejected the arguments that the Appellees advance here against ripeness; a challenge to a law can and should occur even if that law has yet to be enforced. Appellants concede that there was "little need" to show history of past prosecution, Appellee Br. at 13 (citing *Isaacson v. Mayes*, 84 F.4th 1089, 1099 (9th Cir. 2023)), but under *Babbitt* the Supreme Court is clear that there is simply *no* need to show past prosecution. Laws can and should be examined before their enforcement when they threaten First Amendment rights. Because this was a new law specifically targeting poll workers and poll watchers for upcoming 2024 elections, there could not be any history of past prosecution or enforcement. That does not prevent Appellants from challenging the law until it is too late.

10

**B.     Appellants Have Alleged a Credible Threat of Prosecution in the Face of Vagueness and Overbreadth.**

Accordingly, this Court should turn instead to the time-honored principle that when a plaintiff challenges a law as unconstitutional, "it is not necessary that petitioner first expose himself to actual arrest or prosecution to be entitled to challenge a statute that he claims deters the exercise of his constitutional rights." *Steffel*, 415 U.S. at 459. Instead, the courts permit pre-enforcement review in situations where potential enforcement is "sufficiently imminent." *Susan B. Anthony List*, 573 U.S. at 159. In order to meet this requirement, all a plaintiff need allege is a plan to act in a way "arguably affected" by a statute, and that there is a "credible threat" that the individual will be prosecuted. *Babbitt*, 442 U. S. at 298.

The Appellees attack the Appellants' standing by arguing that they failed to show their concrete plans to violate the challenged law. But their argument misses the nature of the First Amendment rights at issue in this case. When it comes to standing to challenge a law that threatens those rights, all that is required for standing is that "the plaintiff's intended speech arguably falls within the statute's reach." *Cal. Pro-Life Council, Inc. v. Getman*, 328 F.3d 1088, 1095 (9th Cir. 2003). When challenging a specific law clear in its effects, a plaintiff must point to specific conduct covered by the statute. For example, to have standing to challenge a mandate towards employers of a certain number of employees, an employer simply needs to

11

have that number of employees.

But the First Amendment is different. When a law vaguely chills First Amendment rights, a challenger may be unable to identify specific conduct; "A plaintiff who mounts a pre-enforcement challenge to a statute that he claims violates his freedom of speech need not show that the authorities have threatened to prosecute him; the threat is latent in the existence of the statute." *Id.* (quoting *Majors v. Abell*, 317 F.3d 719, 721 (7th Cir. 2003)). The threat of prosecution latent in a criminal statute existing establishes standing; such a law "may deter constitutionally protected expression because most people are frightened of violating criminal statutes." *Id.*

In short, all that is required for standing in a pre-enforcement challenge to laws that threaten the First Amendment is for the plaintiff to allege "'that a threat of potential enforcement will cause him to self-censor.'" *Tingley*, 47 F.4th at 1068 (quoting *Protectmarriage.com-Yes on 8*, 752 F.3d at 839). This Court has regularly acknowledged the principle that a plaintiff does not need to meet an overly rigorous standard to show that their First Amendment rights have been threatened. "[T]he Supreme Court has dispensed with rigid standing requirements" for First Amendment protected speech claims and has instead endorsed a "hold your tongue and challenge now" approach. *Cal. Pro-Life Council*, 328 F.3d at 1094 (quoting

12

*Ariz. Right to Life PAC*, 320 F.3d at 1006).

Appellants should not be required to prove the criminal cases against them under SB 406 before they can challenge its enforcement, and the law simply does not require them to do so. *Contra* Appellee Resp. at 10 ("Plaintiffs have not alleged that they would have violated SB 406 had they not self-censored."). Appellants allege that they wish to engage in poll and election observation activities, and that SB 406's definition of intimidation and undue influence may possibly include within its scope the kinds of activities that they would otherwise engage in. This allegation suffices for standing, and they need not prove that their conduct would with certainty constitute a violation of the statute. Their fear of being prosecuted for crimes under SB 406 has already affected their willingness to participate as poll workers and poll watchers. They have alleged that the unpredictability of how SB 406 will be applied burdens them as they may come in contact with elections officials during elections with the possibility of being charged with a class E felony for their conduct, uncertain what is and is not "intimidation" under the law.

In order to defeat standing, Appellees would need to show that it is not even "plausible" that Appellants' conduct would not come within the scope of the statute. They need to show this in light of the posture of this case, a motion to dismiss where the allegations in the complaint are taken as true, when the passage of SB 406 and

13

the fear of prosecution thereunder has already created a chilling effect on the Appellants' ability to speak. Appellants contend that SB 406 is sufficiently vague such that they cannot know whether they conduct will come within the statute; they cannot contradict themselves by also specifying how their conduct will violate the statute. The Appellants cannot specify how their conduct will violate the statute when they do not know what conduct might violate the statute, and that is the crux of their case.

C. **Appellants Have Standing and a Plausible Claim By Pointing To the Wide Scope Of Conduct Affected by the Statute; That Breadth Is Not Saved by the Statute's Mens Rea Component.**

Appellants have alleged that they have an imminent fear of engaging in poll watching and other election day activities because of the threat of subjective prosecution under a vague statute. Specifically, they have contended that SB 406 fails to properly identify what conduct is actually prohibited by the statute. The actus reus of SB 406 threatens First Amendment rights by leaving broad and undefined the scope of its prohibition. The Appellees respond by arguing that the mens rea component of the statute saves any overbreadth concerns regarding the breadth of the actus reus. "SB 406 requires a defendant to have the specific intent to either interfere with an elections official's performance of duties or retaliate against an elections official for his or her performance of duties." Appellee Resp. 19. This

14

Court should reject this argument; an actus reus in a statute that threatens First Amendment rights cannot be saved by the statute's mens rea.

In *Fischer v. United States*, 144 S. Ct. 2176, 2179 (2024), the Supreme Court recently rejected a similar argument and made clear that the overbreadth of a statute's prohibitions cannot be saved by a mens rea component. Federal law provides a twenty-year prison sentence for

> [w]hoever corruptly— (1) alters, destroys, mutilates, or conceals a record, document, or other object, or attempts to do so, with the intent to impair the object's integrity or availability for use in an official proceeding; or (2) otherwise obstructs, influences, or impedes any official proceeding, or attempts to do so.

18 U.S.C. § 1512(c). As used in Section 1512, the term "official proceeding" includes "a proceeding before the Congress." *Id.* § 1515(a)(1)(B). The D.C. Circuit held that the statute's actus reus is broad enough to include any action that in any way may influence any official proceeding. *United States v. Fischer*, 64 F.4th 329, 332 (D.C. Cir. 2023).

In dissent, Judge Katsas highlighted the First Amendment implications of interpreting the statute's actus reus so broadly.

> In the government's view, subsection (c)(2) reaches any act that obstructs, influences, or impedes an official proceeding—which means anything that affects or hinders the proceeding, see Marinello, 138 S. Ct. at 1106. Among other things, that construction would sweep in advocacy, lobbying, and protest—common mechanisms by which citizens attempt to influence official proceedings. Historically, these

15

activities did not constitute obstruction unless they directly impinged on a proceeding's truth-seeking function through acts such as bribing a decisionmaker or falsifying evidence presented to it. And the Corporate Fraud Accountability Act of 2002, which created section 1512(c), seems an unlikely candidate to extend obstruction law into new realms of political speech[.]

*Id.* at 378 (Katsas, J., dissenting). Under the majority's interpretation, all the government needed prove to reach a conviction, resulting in up to twenty years of imprisonment, is that a defendant in some way obstructs, influences, or impedes any official proceeding (or merely attempts to do so).

Judge Katsas emphasized in his dissent that a mens rea requirement does not subtract from the breadth of the actus reus of a statute. An interpretation that says, just about everyone is guilty of the criminal actus reus, but we will fix it with an appropriately well-tailored mens rea requirement, is simply not an adequate method of statutory interpretation. Mental state, such as "corruptly," is a question of fact. *See United States v. N.*, 910 F.2d 843, 942 (D.C. Cir. 1990) (Silberman, J., dissenting in part) ("[I]t seems inescapable that this is a question of fact for the jury to determine whether an endeavor was undertaken corruptly.").

Mens rea, in other words, is insufficient to serve as a safeguard to protect defendants because it is a question that is ultimately decided by a trier of fact. "Under such a vague standard, mens rea denotes little more than a jury's subjective disapproval of the conduct at issue." *Fischer*, 64 F.4th at 379-80 (Katsas, J.,

16

dissenting). If the only meaningful limitation on the government is mens rea, the government may go after whomever it may choose and leave it to defendants to address their own mental state at trial. Even where such defendants could prevail on appeal, lives and careers are ruined, and speech is chilled. The financial and reputational costs of a defense would itself be a severe punishment. Under statutes with a broad actus reus that chill speech, "the process is the punishment." *Bolingbrook v. Citizens Utilities* Co., 864 F.2d 481, 484 (7th Cir. 1988).

Under a vague standard of actus reus that can include many kinds of activities, mens rea denotes little more than a jury's subjective disapproval of someone's conduct. A prosecutor and then a jury can be left free to determine for themselves what sufficiently constitutes evidence of a corrupt motive. The Supreme Court rejected this interpretation.

In *Fischer v. United States*, 144 S. Ct. 2176, 2179 (2024), the Supreme Court reversed the D.C. Circuit and limited the effects of 18 U.S.C. § 1512: "to prove a violation of Section 1512(c)(2), the Government must establish that the defendant impaired the availability or integrity for use in an official proceeding of records, documents, objects, or as we earlier explained, other things used in the proceeding, or attempted to do so." *Fischer*, 144 S. Ct. at 2190. Regardless of the mens rea component, the government's "novel interpretation would criminalize a broad swath

17

of prosaic conduct, exposing activists and lobbyists alike to decades in prison." *Id.* at 2189. The Supreme Court adopted Judge Katsas's interpretation and narrowed the scope of 18 U.S.C. § 1512's actus reus component. No mens rea component saved the D.C. Circuit's broad interpretation.

In short, a mens rea component does not save a statute that unconstitutionally infringes upon speech. The issue before this Court is accordingly *not* whether SB 406's mens rea standard is appropriate. This Court should instead focus on whether a criminal actus reus that includes "force, intimidation, coercion, violence, restraint or undue influence," NRS § 293.705(1), without providing clear definitions of those terms, can withstand constitutional scrutiny. The fact that the statute contains an intent requirement does not save the fact that its acts are left undefined. The intent requirement does not save the statute; the acts prohibited by the statute are still sufficiently vague that they threaten to chill First Amendment rights. Individuals left uncertain whether their acts fall within a statute's ambit are hardly comforted by the possibility that they might be able to prove their lack of criminal intent.

All the appellants were required to show, to establish injury in fact, was a "'substantial risk' that the harm will occur." *Clapper*, 568 U.S. at 414 n.5. And at the pleading stage, the showing of substantial risk merely needed to be "general factual allegations of injury resulting from the defendant's conduct." *Lujan*, 504 U.S.

18

at 561. Appellants have alleged that SB 406 poses a significant threat to democratic participation by deterring them and those similarly situated from engaging in lawful monitoring and oversight of elections. That threat is not saved by the statute's mens rea component. Even with a specific intent requirement, the broad and undefined language of SB 406 creates a significant risk of misinterpretation and wrongful prosecution, leaving individuals uncertain what conduct may be illegal. Even if defendants ultimately persuade the jury that they lacked the mens rea requirement, the process is still the punishment.

## CONCLUSION

For the foregoing reasons, *Amicus Curiae* respectfully asks this Court to reverse the district court's judgment.

Respectfully Submitted,

JORDAN SEKULOW
DONN PARSONS

*/s/ Benjamin P. Sisney*
BENJAMIN P. SISNEY
NATHAN J. MOELKER
AMERICAN CENTER FOR LAW & JUSTICE
201 Maryland Ave., NE
Washington, DC 20002
Phone: (202) 546-8890
Email: bsisney@aclj.org
*Counsel for Amicus Curiae*

19

**CERTIFICATE OF COMPLIANCE WITH TYPE VOLUME LIMIT, TYPEFACE REQUIREMENTS AND TYPE-STYLE REQUIREMENTS**

This brief complies with the type-volume limit of Fed. R. App. P. 32(a)(7)(b) because it contains 4,572 words, excluding the parts of the Brief exempted by Fed. R. App. P. 32(f).

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word for Office 365 in 14-point Times New Roman font.

Dated: November 11, 2024


/s/ *Benjamin P. Sisney*
Benjamin P. Sisney
*Counsel for Amicus Curiae*

**CERTIFICATE OF SERVICE**

I hereby certify that on November 11, 2024, I electronically filed a copy of the foregoing *Amicus Curiae* Brief using the ECF System which will send notification of that filing to all counsel of record in this litigation. I also certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

Dated: November 11, 2024

/s/ *Benjamin P. Sisney*
Benjamin P. Sisney
*Counsel for Amicus Curiae*

21